UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RASHEEN K. BROWN,

               Petitioner,

                                 CIVIL NO. 2:10-CV-14833

v.                               HONORABLE PAUL D. BORMAN
                                 UNITED STATES DISTRICT COURT

MARY BERGHUIS,

               Respondent.

_____/

## OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS, (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS

       Rasheen K. Brown, ("Petitioner"), presently confined at the West Shoreline Correctional

Facility in Muskegon Heights, Michigan, has filed a petition for writ of habeas corpus pursuant

to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for possession

of 50 or more but less than 450 grams of cocaine, M.C.L.A. 333.7403(2)(a)(iii); resisting and

obstructing a police officer, M.C.L.A. 750.81d(1); and being a third felony habitual offender,

M.C.L.A. 769.11. For the reasons stated below, the petition for writ of habeas corpus is

**DENIED.**

## I. BACKGROUND

       Petitioner was convicted of the above offenses following a jury trial in the Oakland

County Circuit Court.

       Officer Miller Dao of the Pontiac Police Department testified that on October 1 2004, he

pulled over the motor vehicle that petitioner was driving, because petitioner had driven through a

stop sign without stopping.  Petitioner gave Officer Dao his driver's license but could not provide

the registration or proof of insurance because he claimed that he was driving a friend's car.

Officer Dao testified that petitioner appeared nervous.  Officer Dao returned to his patrol car and

ran petitioner's driver's license on his computer for warrants.  Officer Dao indicated that there

were no outstanding warrants against petitioner and he had "no reason to arrest him." (Tr.

2/9/2006, pp. 110-14).

When Officer Dao returned to the vehicle, he noticed petitioner making "movements

toward the center console area," which made the officer concerned for his safety.  Officer Dao

asked petitioner to get out of the vehicle to perform a protective pat down search.  While patting

down petitioner, Officer Dao felt a soft bulge in petitioner's right pants pocket.  Officer Dao

asked petitioner what was in his pocket.  Petitioner did not respond to Officer Dao's answer but

attempted to remove Officer Dao's hand from his pocket area.  When Officer Dao ordered

petitioner to place his hands back on top of the patrol car, petitioner pushed himself away from

Dao.  Officer Dao attempted to try and arrest petitioner for resisting arrest.  Officer Dao

attempted to use pepper spray on petitioner, but fell to the ground.  Petitioner ran away. (*Id.,* pp.

114-18).

Officer Dao pursued petitioner on foot through a residential neighborhood.  During the

foot chase, Officer Dao witnessed petitioner reach into his right front pants pocket, remove a

plastic bag, and throw it onto the roof of an apartment complex.  Officer Dao arrested petitioner

with the assistance of other police officers.  Officer Dao did not actually retrieve the plastic bag

that he saw petitioner throw on the roof, but sent other officers to seize the bag, because Officer

Dao began experiencing chest pain and had to be taken to the hospital. (*Id.,* pp. 118-21).

2

Officer Jose Garcia, a police officer in the Pontiac Police Department, was driving in a patrol car with another officer, when he came across Officer Dao's patrol car, with petitioner seated in the rear seat. Officer Dao was breathing heavily and appeared to be in distress. Officer Dao and some citizens told Officer Garcia to look for something on the rooftop of an apartment building. Officer Garcia and another officer went to the location and found a white grocery bag with Ziploc baggies inside, which contained cocaine. (Tr. 2/10/2006, p. 194-200).

A police laboratory technician confirmed that the substance that was found inside this bag was cocaine. (*Id.*, pp. 173-91).

Pontiac Police Officer Edward Lasseigne testified that he searched petitioner's vehicle subsequent to his arrest and discovered rubber gloves, cleaning equipment, and a cell phone. (*Id.*, p. 213). At some point, the cell phone rang and Officer Lasseigne answered. A man on the other end of the line mentioned something about his "stash" and that he was "straight." (*Id.*, pp. 220-225).

Following his conviction, petitioner filed a motion for a judgment notwithstanding the verdict, in which he claimed that trial counsel was ineffective for failing to properly challenge the search of petitioner following the traffic stop by Officer Dao. The trial court denied the motion. (Tr. 2/14/2007, p. 7).

Petitioner's conviction was affirmed on appeal. *People v. Brown*, No. 270877 (Mich.Ct.App. June 3, 2008); *lv. den.*, 482 Mich. 1035, 757 N.W. 2d 81 (2008).

Petitioner then filed a post-conviction motion for relief from judgment with the Oakland County Circuit Court, which was denied. *People v. Brown*, No. 04-199771-FH (Oakland County Circuit Court, April 14, 2009). Petitioner then filed an application for leave to appeal with the

Michigan Court of Appeals. While the appeal remained pending in the Michigan Court of

Appeals, petitioner filed a petition for writ of habeas corpus, which was dismissed on the ground

that petitioner had failed to exhaust all of the claims contained in the petition. *See Brown v. State*

*of Michigan,* No. 09-12364; 2009 WL 1883917 (E.D. Mich. June 30, 2009). The Michigan

appellate courts subsequently denied petitioner leave to appeal. *People v. Brown,* No. 270877

(Mich.Ct.App. October 30, 2009); *lv. den.* 485 Mich. 1083, 777 N.W.2d 419 (2010).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.   Defendant Brown is entitled to federal habeas corpus relief because his
incarceration is illegal and rests upon tainted evidence that is the fruit of the
poisonous tree because of the illegal search and seizure of his person by Officer Dao
following a civil traffic stop.

II. Defendant Brown was denied a fair trial given the ineffective assistance of his trial
counsel who failed to reasonably challenge the continued detention of defendant at
the conclusion of the traffic stop when the officer lacked reasonable suspicion and
was unable to articulate specific facts as would even remotely justify a
pat-down-search of defendant.

III. Defendant Brown is entitled to federal habeas corpus relief because he is illegally
confined where his convictions and sentences for possession of cocaine and resisting
arrest are constitutionally deficient as they stand against the great weight of the
evidence.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act

of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to any
claim that was adjudicated on the merits in State court proceedings unless the
adjudication of the claim–

(1)   resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as

4

> determined by the Supreme Court of the United States; or
> (2)    resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for

5

relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87. Finally, in reviewing petitioner's claim, this Court must remember that under the federal constitution, petitioner was "entitled to a fair trial but not a perfect one."

*Lutwak v. United States,* 344 U.S. 604, 619 (1953).

## III. DISCUSSION

### A. Claim # 1. The Fourth Amendment claim.

Petitioner first contends that he is entitled to habeas relief because the trial court erred in refusing to suppress the cocaine as being the fruit of an illegal search made by Officer Dao.

An evidentiary hearing was conducted on petitioner's motion to suppress the evidence on June 24, 2005. At the conclusion of the hearing, the judge indicated that she would view the videotape from Officer Dao's patrol car dash camera. The judge ultimately denied the motion to suppress the evidence. *People v. Brown,* No. 04-199771-FH (Oakland County Circuit Court, October 10, 2005). On direct appeal, the Michigan Court of Appeals upheld the legality of the traffic stop. *People v. Brown,* No. 270877, Slip. Op. at * 3

A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000). For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico,* 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003); *rev'd on other grds* 606 F.3d 867 (6th Cir. 2010). Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim "is simply irrelevant." *See Brown v.*

*Berghuis,* 638 F. Supp, 2d 795, 812 (E.D. Mich. 2009). "The courts that have considered the matter 'have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar.'" *Id.* (quoting *Gilmore v. Marks,* 799 F.2d 51, 57 (3rd Cir. 1986)). Thus, an argument by a habeas petitioner that is "directed solely at the correctness of the state court decision[on a Fourth Amendment claim] 'goes not to the fullness and fairness of his opportunity to litigate the claim[s], but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant.'" *Brown,* 638 F. Supp. 2d at 812-13 (quoting *Siripongs v. Calderon,* 35 F.3d 1308, 1321 (9th Cir. 1994)).

Therefore, on federal habeas review, a federal court cannot re-examine a petitioner's Fourth Amendment claim that evidence should have been suppressed as "poisonous fruit" of his illegal arrest or search, where the state provided an opportunity for full and fair litigation of the habeas petitioner's Fourth Amendment claim prior to trial. *See Walendzinski v. Renico,* 354 F. Supp. 2d 752, 759 (E.D. Mich. 2005); *See also Monroe v. Smith,* 197 F. Supp. 2d 753, 766 (E.D. Mich. 2001).

Petitioner is unable to raise a Fourth Amendment claim that the evidence in this case was the product of an illegal arrest or search when he raised the factual basis for this claim in the state trial and appellate courts and the state courts thoroughly analyzed the facts and applied the proper constitutional law in rejecting his claim. *Machacek,* 213 F.3d at 952. Because petitioner was afforded opportunities to present his case regarding the validity of the search, *Stone* bars his Fourth Amendment claim. *Brown,* 638 F. Supp. 2d at 813.

**B. Claim # 2. The ineffective assistance of trial counsel claim.**

Petitioner next contends that trial counsel was ineffective for failing to bring the proper

8

Fourth Amendment challenge to seek the suppression of the cocaine.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v.*

9

*Mirzayance*, 129 S. Ct. 1411, 1420 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 129 S. Ct. at 1420 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

> Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel' s actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast

doubt on a suppression hearing that took place" six years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

To prove that counsel's failure to litigate a Fourth Amendment claim competently is the principal claim of ineffectiveness, a defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence, in order to demonstrate actual prejudice. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

Petitioner's basic argument is that trial counsel was ineffective for arguing that the evidence had been obtained as the fruit of an illegal arrest, rather than challenge the search on the ground that Officer Dao did not have a reasonable suspicion to believe that petitioner was armed with a weapon, so as to justify a protective pat down search. In a supplemental motion filed subsequent to the evidentiary hearing, petitioner's counsel had argued that Officer Dao had, for constitutional purposes, arrested petitioner when he asked him to get out of the car, so that he could search the car and put petitioner in the back of the patrol car. Counsel argued that because the arrest was illegal, the cocaine should be suppressed as the fruits of that illegal arrest.

Petitioner's argument fails for several reasons. First, contrary to what petitioner claims, it appears that trial counsel did challenge the validity of the pat down search by challenging Officer Dao's testimony that petitioner's furtive gestures and nervous demeanor had caused him to fear that petitioner might have a weapon in his possession. Counsel also argued that a videotape from the traffic stop contradicted Officer Dao's assertion that petitioner was making furtive movements. Finally, counsel also pointed out that even though Officer Dao claimed to fear for his safety, he did not radio for assistance. *Brown*, No. 270877, Slip. Op. at * 2.

11

Counsel, thus, did challenge Officer Dao's rationale for conducting a protective pat down search of petitioner.

More importantly, counsel's decision to argue that the evidence should have been suppressed as the result of an illegal arrest was not unreasonable.

In *Cowans v. Bagley*, 639 F.3d 241, 250 (6th Cir. 2011), the Sixth Circuit ruled that trial counsel was not ineffective for choosing to challenge the search of the petitioner's home on the basis that his parole officer lacked probable cause to search the home, rather than to focus on the validity of the consent given by petitioner's wife to police officers to search the home. In rejecting this claim, the Sixth Circuit observed:

> [t]hat trial counsel's failure to make an additional (or alternative) Fourth Amendment objection does not fall below an objective standard of reasonableness. Often an attorney will have several possible arguments available to her and will choose the one she thinks is the most likely to succeed or offers the greatest possible return for her client. Choosing the ground on which to contest a search is classically the kind of strategic decision that attorneys are hired to make.

*Id.* (*citing Strickland*, 466 U.S. at 690–91).

In the present case, trial counsel may very well have concluded that it would be stronger to argue that petitioner had been unlawfully arrested by Officer Dao and that any subsequent search or seizure was the fruit of that illegal arrest, rather than to challenge whether Officer Dao had a reasonable suspicion to conduct a pat down of petitioner for weapons. In *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968), the Supreme Court held that there is no Fourth Amendment violation under a reasonable suspicion standard if "the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." By contrast, the standard for determining probable cause to make an arrest is

12

whether the facts and circumstances were sufficient to warrant a prudent officer in believing that the suspect had committed or was committing a crime. *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). The Supreme Court has noted that the level of reasonable suspicion required for a *Terry* stop is "less demanding" than the level of suspicion required for probable cause to search or arrest a suspect. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). "[R]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *See Alabama v. White,* 496 U.S. at 325, 330 (1990).

Trial counsel could have reasonably concluded that it would be better strategy to argue that petitioner had been illegally arrested, because this would have required the prosecutor to prove that Officer Dao had probable cause to arrest petitioner, rather than the lesser standard of reasonable suspicion required for a *Terry* type pat down search. Because trial counsel's strategy in challenging the legality of the seizure of the cocaine on this basis was reasonable, petitioner is unable to establish that counsel was deficient in how he handled the motion to suppress.

Finally, petitioner is unable to establish that he was prejudiced by any alleged deficiencies on counsel's part in failing to argue more forcefully that Officer Dao lacked a reasonable or articulable suspicion to engage in a protective pat down search of petitioner. In denying petitioner's motion to suppress, the trial judge specifically indicated that she had no reason to doubt Officer Dao's testimony concerning petitioner's furtive gestures and that petitioner's conduct and the officer's fear for his safety were sufficient to justify the search.

13

Although the judge viewed the videotape from Officer Dao's patrol car, she indicated that the videotape neither supported nor dispeled petitioner's claim that he did not engage in any furtive gestures. *People v. Brown,* No. 2004-199771-FH, * 2 (Oakland County Circuit Court, October 10, 2005). Following petitioner's conviction, petitioner filed a motion for a judgment notwithstanding the verdict, in which he claimed that trial counsel was ineffective for failing to challenge Officer Dao's basis for engaging in a protective pat down search of petitioner. The trial judge denied the motion, ruling that even if counsel had made the arguments that petitioner claims should have been made, it would not have changed her decision to deny the motion to suppress. (Tr. 2/14/2007, p. 7). Because the trial judge believed that Officer Dao was testifying truthfully concerning petitioner's furtive gestures, and thus concluded that this supported a protective pat down search for petitioner for weapons, petitioner has failed to show that the outcome of the case would have been any different had counsel more forcefully challenged Officer Dao's reasonable suspicion to engage in a pat down search. Petitioner is not entitled to habeas relief on his second claim.

### C. Claim # 3. The great weight of the evidence claim.

Petitioner lastly contends that the verdict went against the great weight of the evidence.

A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. *Cukaj v. Warren,* 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002); *See also Artis v. Collins,* 14 F. App'x 387 (6th Cir. 2001)(declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the manifest weight of the evidence). A claim that a verdict went against the great weight of the evidence is not of constitutional

14

dimension, for habeas corpus purposes, unless the record is so devoid of evidentiary support that a due process issue is raised. *Cukaj,* 305 F. Supp. 2d at 796; *See also Crenshaw v. Renico*, 261 F. Supp. 2d 826, 834 (E.D. Mich. 2003). The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was any evidence to support it. *Dell,* 194 F. Supp. 2d at 648. As long as there is sufficient evidence to convict petitioner of these crimes, the fact that the verdict may have gone against the great weight of the evidence would not entitle him to habeas relief. *Id.*

To the extent that petitioner contends that the evidence was insufficient to convict him of the charges, he would not be entitled to relief. [1]

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a

---

[1]   Respondent contends that any challenge to the sufficiency of evidence to convict petitioner of possession of cocaine is procedurally defaulted because petitioner never exhausted this claim with the state courts and no longer has an available court remedy with which to do so. Although petitioner did not specifically raise a sufficiency of evidence claim in his motion for relief from judgment, he did raise an actual innocence claim in which he argued that there was insufficient evidence to convict him of possession of cocaine. This Court notes that procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6ᵗʰ Cir.2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Because of the uncertainty over whether petitioner properly raised a challenge to the sufficiency of evidence to convict him of possession of cocaine, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19(internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, --- S.Ct. ----, No. 2012 WL 1912196, * 4 (U.S. May 29, 2012).

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir.2003).

Petitioner first claims that there was insufficient evidence to convict him of resisting and obstructing, because there was no evidence that he was being arrested when he resisted and fled

16

from Officer Dao.

The Michigan Court of Appeals rejected petitioner's claim, on the ground that M.C.L.A. 750.81d(1) does not require an arrest. Instead, the statute can be violated if a defendant resists or obstructs a person whom that defendant knows or has reason to know is performing his duties. The Michigan Court of Appeals concluded that there was sufficient evidence to support petitioner's resisting and obstructing conviction where Officer Dao testified that while conducting a pat down search, petitioner grabbed the officer's hand, turned around and fought with the officer, before getting up and running away. *Brown,* Slip. Op. at * 4.

State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975). What is essential to establish the elements of a crime is a matter of state law. *See Sanford v. Yukins,* 288 F.3d 855, 862 (6th Cir. 2002). Thus, "[s]tates are allowed to define the elements of, and defenses to, state crimes." *See Lakin v. Stine,* 80 F. App'x 368, 373 (6th Cir. 2003)(citing *Apprendi v. New Jersey*, 530 U.S. 466, 484-87 (2000); *McMillan v. Pennsylvania*, 477 U.S. 79, 84-86, (1986)). A federal habeas court must therefore defer to a state appellate court's construction of the elements of state crimes. *Coe v. Bell*, 161 F.3d 320, 347 (6th Cir. 1998).

In the present case, the Michigan Court of Appeals concluded that petitioner did not actually have to been placed under arrest to be convicted of resisting and obstructing an officer so long as petitioner resisted and obstructed a person whom he knew was performing his duties. This Court must defer to the Michigan Court of Appeals' construction of the elements of resisting and obstructing a police officer. Because there was testimony that petitioner actively resisted Officer Dao when the officer attempted to pat him down while the officer was

17

performing his official duties as a police officer, there was sufficient evidence to convict

petitioner of resisting and obstructing a police officer.

This Court further concludes that there was sufficient evidence to convict petitioner of

possession of 50 or more but less than 450 grams of cocaine.

Under Michigan law, to convict a defendant of possession with intent to deliver a

controlled substance, the prosecution must prove: (1) that the recovered substance is a narcotic;

(2) the weight of the substance; (3) that the defendant was not authorized to possess the

substance; and (4) that the defendant knowingly possessed the substance with the intent to

deliver it. *See People v. McGhee,* 268 Mich.App. 600, 622; 709 N.W.2d 595 (2005).

In order to convict a defendant under Michigan law of possession of a controlled

substance, a prosecutor must prove that he exercised control or had the right to exercise control

over the controlled substance. *See McFarland v. Yukins,* 356 F.3d 688, 708 (6th Cir. 2004)(citing

*People v. Konrad,* 449 Mich. 263; 536 N.W.2d 517 (1995))(additional citations omitted).

Under Michigan law, a defendant need not have actual physical possession of a controlled

substance in order to be guilty of possessing it. *People v. Wolfe,* 440 Mich. 508, 519-20; 441

N.W. 2d 1201 (1992). Possession of a controlled substance may be actual or constructive. *Id.*

"Constructive possession exists when the totality of the circumstances indicates a sufficient

nexus between the defendant and the contraband." *Id.* at 521. Constructive possession of a

controlled substance can be proven by circumstantial evidence. *See People v. McGhee,* 268

Mich. App. at 623.

In the present case, Officer Dao testified that when he went to search petitioner, he felt a

soft bulge in petitioner's right pants pocket. Petitioner began fighting with Officer Dao, before

18

running away. While chasing petitioner, Officer Dao testified that he observed petitioner take a plastic bag out of that same right pants pocket and throw it onto the roof of an apartment building. Moments later, Officer Garcia recovered a plastic bag containing cocaine from the roof of that same apartment building.

In the present case, a rational trier of fact could have concluded that the plastic bag with the cocaine that had been recovered by Officer Garcia from the roof of the apartment building was the same plastic bag that Officer Dao had seen petitioner throw on that same roof moments earlier. A rational trier of fact could further have concluded that petitioner had originally taken off running from Officer Dao because he knew that he had cocaine in his possession. Under the circumstances, there was sufficient evidence to convict petitioner of possession of cocaine. Petitioner is not entitled to habeas relief on his third claim.

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV.    CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis.*

**SO ORDERED.**

_____
PAUL D. BORMAN
UNITED STATES DISTRICT COURT

DATED: 6-22-12